Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Appellants, please remember that if you want to give a rebuttal, you've got to keep an eye on your own time. All right, please. We'll start with the United States of America v. Ryan Lasalle, and we'll continue down the day sheet in that order. All right, good morning. Good morning, Your Honors. My name is John Rhodes. I'm from the Missoula Office of the Federal Defenders of Montana. I represent Ryan Lasalle. Because Montana's definition of cocaine is broader than the federal definition of cocaine, specifically the statutory definition of cocaine in the Controlled Substances Act, plain air exists here because the guidelines were miscalculated, and that plain air affected Mr. Lasalle's substantial rights under the Supreme Court's decision in Molina Morales. Mr. Rhodes, how do you get around Coronado? Your Honor, in that case, in the way I understand what the government's saying is that that was a case that involved the regulatory definition, but Coronado actually is a case that looked at the charging documents to determine if the charging documents could be used to establish the categorical analysis. It didn't look at the issue here, which is the statutory definitions, so it doesn't even address the issue that we've raised in this case. So I think Coronado doesn't even apply. Is there any case that's done this, what you're asking us to do? The Lorenzo decision did it initially, that Judge Bea knows all about. That was withdrawn. Okay. But it's not that Lorenzo is authoritative and dictates the results here. That's not our argument. It just supplies the analytical framework that shows that we're correct, and if you look at Ninth Circuit case law regarding plain air review in the categorical analysis context, there are cases where the court just engages in full categorical analysis under plain air review. What's your strongest, I didn't hear you identify a case. I'm not trying to be tricky. I don't think we've done this, exactly what you're, and it's really an anomalous, I think, result of the difference between the statute and the regulation on the federal side, but is there a case where this has been followed? No, other than in Lorenzo, which obviously was originally published and withdrawn and then non-published disposition. Okay. So it's not that Lorenzo again says you have to reverse here. It just provides the analytical framework, which is, again, the broader Taylor categorical analysis, which really doesn't matter if it's de novo review or a plain air review. I think it's possible to connect the dots the way you're trying to connect them and get to where you want to go. I'll grant you that. That's just me, but that seems right, except it is certainly a novel approach. So how do you get past plain air? It's not novel when you look at the look at what Mr. LaSalle was convicted of in Montana, which distribution of cocaine, and determine whether Montana's statutory definition of distribution of cocaine is the same as, broader, or narrower than the federal definition, and specifically the federal definition of cocaine. But what we would expect is that on the federal side, the Congress under the Controlled Substances Act is relying on the DEA to periodically update the schedules and the definitions, right? And those schedules, Wax and Wayne. Wax and Wayne is well put. I'm sure you've read our brief where Congress offers a definition, then there's a regulatory definition, and then Congress, in essence, overrides the regulatory definition in 1986, and that's the definition we're left with, is Congress's statutory definition of cocaine. And the government doesn't dispute, it didn't even answer in its response brief, whether the definition of cocaine congressionally is broader or narrower than Montana's. And it's clearly more narrow, because Montana includes derivatives of cocaine in its definition, and the statutory definition does not. Well, but the district court had a 20-year track record. No one has made this anomaly. Because I think by your concession, this anomaly has existed for, since 1986. To my knowledge, no one's made it, at least in the case law. Right, and that's why I keep running into plain error. You're expecting the district court to really, to have been clairvoyant. When you say anomaly, Your Honor, that doesn't mean that plain error doesn't apply, and I completely agree that I think the is the most complex area of reoccurring analysis that I have to deal with. I literally have to break out the books every time I stumble upon this, and do the analysis again, and it's incredibly complex. I haven't done an exact analysis, but it seems that in this Court's published opinions over the last couple of years, in criminal cases, it's the Taylor categorical approach that is probably the leading subject matter. And that's just how complex this is. So the fact that it's complex, that this is a novel argument, doesn't mean that there's plain error under the categorical analysis. And I want to emphasize that the government has not disputed that the federal definition is not as broad as the state definition. Mr. Rosen, may I ask you a question? This is in the back of my mind, and I'd like to clear it out. You're not arguing that the Congressional Act, which delegates to the Attorney General the power to add substances in the regulatory framework, which he, in turn, delegates to the DEA, Drug Enforcement Agency, is an unconstitutional delegation of power? That's been recognized, well, this Court recognized it long before the Supreme Court in the Toobie decision, that that's fine. But there's a difference between scheduling and defining. And that's where the government's just wrong in its answer brief. It's focusing on scheduling. And the issue here is the definition. And I don't know how you can get around the fact that Congress has offered its definition, that that's the authoritative definition, and somehow argue that a preexisting, and you are the DEA, somehow, even though that precedes the Congressional definition, that's controlling here. There's just, that makes no sense in terms of the separation of powers. So this is sort of a reverse Chevron situation where the later statute limits the regulatory interpretation. Exactly. Congress is the ultimate authority. So I just think that argument is a dead end for the government. So am I, did I assume something incorrectly in my earlier question? Or is it the case that this, what I'm going to call an anomaly, this circumstance in this, about the difference between the federal statute and the regulatory definition on the federal side, that has existed for 20 years? And I think you said that much. My question really is, in Montana, has anyone raised this? Not that I know of. Okay. In Montana, the legislature, and again, this is all briefed in our opening brief, aligned its definition with the federal regulatory definition. And obviously, if somebody had looked closer at this, would say, wait a minute, we have a problem. We need to make this really minor, scrivener change and align it with the statutory definition that Congress has enacted, which would be a simple change. But I think no one's noticed this until now. Are you also taking the position that the Montana statute is not divisible? It's divisible in the sense of the type of drug has to be identified. Cocaine, heroin, methamphetamine, marijuana. But beyond that, in terms of the particular chemical makeup of the drug, here specifically cocaine, it's indivisible. Which again, is where Lorenzo, it's not authoritative, it doesn't control, but it's instructive because there was a divisibility analysis. I see I've got about a minute and 20 seconds left, so I'll reserve that for rebuttal unless there's more questions. Thank you, Mr. Rhodes. Thank you, your honors. May it please the court, my name is Brian Dakin, I represent the United States. I think it's important first, your honors, to step back and to consider the purpose as to why the court is here and what the issue really is before the court here today. And as we look at this, this is a categorical approach analysis that the court is undertaking to look at the controlled substance offense under Montana law and compare it to the controlled substance offense under federal law. So the way that that happens, as this court is well aware, is you go first to 802. And 802 tells us that you look to 812 to the definition of what is a controlled substance offense. 812 specifically states these are the schedules for the controlled substances. Under 812C, it says unless and until these are amended under the provisions under 811. So Congress specifically sets out and sets forward that there is going to be a way to alter the original schedules that are in 812. So then you go to 811. And what 811 does... Unless and until the statute was adopted after the regulation, right? Respectfully, your honor, no. And the reason that that is the case is, as the appellant even cites on his opening brief at page 22 in the footnote, you'll notice that there was a 2015 update to the regulation that removed a substance from the definition of cocaine. And why is that important is because in that same definition, your honor, it keeps the cocaine derivative within this regulation. It did not change that from 1986 that Congress had updated it, as the appellant has stated, that this is the situation where they wanted to perhaps get rid of this definition, this cocaine derivative definition. But it didn't change it in 2015. It remained the same in 2015. So technically, your honor, this regulation has spoken last. And that's a very important distinction. But his argument is that then you've got a different problem because his argument is that the agency can't trump Congress. And I don't think it's a matter of trumping Congress, your honor. And respectfully, and the reason that I say this is, if you look at the 1986 amendment, that was titled as a technical amendment. It was an amendment to conform the definitions within Title 21. And that was the name of the bill itself, was a technical amendment. And so from that point forward, you can see that Congress actually knows how to limit itself when it wants to limit itself. For instance, in the definition of cocaine, you can see that it says cocoa leaves except, and so it knows how to limit itself. And then when you look to things that Congress has done on its own, which was in the 1970s in the historical notes to this statute, it provides that it wanted a specific provision or a specific substance added in to the schedules. And again, in 2000, they do the same thing with GHB. So what Congress is doing is it can specifically say, yes, we want these substances added into the Controlled Substances Act under these schedules. And it specifically says, your honor, notwithstanding the provisions of 811. And so it's recognizing that there is something in there that says, okay, we've given this authority over to the Attorney General and who then gives it over to the DEA to schedule these drugs. But when we want something specifically done, we're going to tell them that this is what we want done. And if there is a challenge to the actual regulation itself and thinking that there was some sort of overstepping as I'm referencing to, this is not the proceeding and not the process that this has been set out for. There is a process under subchapter 20 or under . . . You're losing me now. What's not the proceeding? What's the this in your sentence? I apologize, your honor. That's okay. And so if you look at Title 21, Section 877, that is the process where you can challenge what the Attorney General has done under this subchapter. But counsel, he doesn't have any interest in that. He's just trying to do what seems to me to be a strain. As I said, I think his argument is novel and interesting and under a different standard of review, maybe the one we need to engage in. I'm not so quick to write it off, but this is plain error, isn't it? It is, yes, your honor. Has the anomaly he's describing existed since 1986? Anomaly is my word, but that circumstance, that status quo has existed since 1986? It has, yes, your honor. And it has not changed. It has not been challenged. And there is certainly the opportunity that this could have been challenged at some point. It could have been challenged, quite frankly, under the procedure that I was describing under 877 if they believed that the Attorney General had overstepped. At the time of the sentencing. Oh, at the time of the sentencing. No, it was not challenged, your honor. And there was not a challenge that was in place at the time of that sentencing. No, your honor. Right. Right. And so where the court is looking then, as has already referenced today, is the Coronado decision. And the Coronado decision provided that they looked to the regulations. And it was the similar situation as to the Lafonte decision, which is an unpublished 2006 decision of this court, which again did the same thing. But the reasoning behind why that occurs is very, very important. And that is because of the specific statutory It's only important if you get past plain error review. Because what the district court did here was what I'm going to call, again, it's my word, he did the vanilla approach. He did the routine approach, right? Yes, your honor. And so that's what one would expect. Yes? It is, yes, your honor. I would agree entirely, yes. And so, yes, that is the only way that we get there in that circumstance. I appreciate the finer point of your argument. I'm just not sure that we reach them, that's all. No, certainly, your honor. And the government would agree with that analysis for sure. We're just making sure in that we're looking at this argument and we are saying there is more than just what the statutory scheme in Title 21 provides. Because Congress itself dictates that it wants to have the ability to update these schedules on a regular basis. As this court held in the Eddy decision, cited in the defendant's brief, they wanted something that was going to be accessible. And what it means to be accessible is things that can change, things that can update. That's why it's given the attorney general the authority here. And so, yes, I don't think that we perhaps get to these finer points as the court is aware, but it's important to consider those finer points in this situation. Unless there are further questions, your honor, the government will rest. Thank you very much. Thank you, your honor. Rebuttal, Mr. Rhodes. Thank you, your honor. I just want to correct one point. It was 1997 when Montana aligned its definitions with the regulatory definitions. With respect to this idea that this is a technical issue, I agree. This is categorical analysis is hyper-technical. That's how it works. With respect to the issue that we're on plain air, I noted in my opening argument, whether it's plain air or de novo review, even this is an anomaly, if this is novel, it doesn't matter. You still engage in the categorical analysis to determine if Montana's definition of the underlying criminal offense distribution of cocaine is broader than the federal definition. And again, the government's not disputing that the statutory Montana's definition of cocaine is broader than the federal definition. So again, whether... What they are disputing is that the 2016 amendment, our regulation update, kept the 1986 regulation, which included derivatives, and therefore came later than the statute. We briefly addressed that where if Congress is going to permit an agency to override its definition, there has to be a specific delegation. And the government didn't put that in its answer brief, so I can't respond authoritatively to that. But there is case law that it's got to be specifically recognized by Congress that this agency, and again, a delegation within the delegation within the agency, can override a regulation. Unless there's anything further, we'd ask this court to remand and reverse and remand for resentencing. Thank you. Thank you very much, and thank both counsel for a very good argument.
judges: Farris, Bea, Christen